## TWYMAN v. CLARK. (No. 2012.)

(Court of Civil Appeals of Texas. Texarkana.
Oct. 30, 1919.)

**Bills and notes ⬤═══539—Finding in suit on note and to foreclose vendor's lien held properly construed.**

In suit to recover the amount of a promissory note for $1,125 and for foreclosure of lien on the east half of a survey conveyed by plaintiff trustee to defendant maker, which lien secured payment of the note, finding that plaintiff and defendant agreed, when the note was signed, that money derived from the sale of timber on land constituting the west half of the survey should be credited on the note, *held* properly construed as a finding the agreement was that the credit against the purchase money due defendant on the land on account of the timber was to be entered as of the dates the payments for the timber were made by plaintiff.

Appeal· from District Court, Harrison County; P. O. Beard, Judge.

Suit by W. T. Twyman against Isom Clark. From a judgment for defendant, plaintiff appeals. Affirmed.

Appellant, Twyman, was the plaintiff in the court below. By his suit he sought (1) a recovery of the amount of a promissory note for $1,125, interest, and attorney's fees, payable to his order on or before January 1, 1917, which he alleged appellee, Clark, made January 1, 1916; and (2) a foreclosure of a lien on the east half of the James Mitchum survey of 320 acres in| Harrison ,county, which, he alleged, he conveyed to said Clark by a deed dated said January 1, 1916, and on which, he further alleged, a vendor's lien existed in his favor to secure the payment of said note.

In his answer Clark alleged that the note sued on was without consideration, and further alleged, and at the trial proved, in substance, that, in January, 1909, he owned the west half of the James Mitchum survey, and that Mrs. M. J. Burress owned the east half thereof; that, having arranged to sell the timber on the entire suryey, he, on January 30, 1909, purchased the east half thereof of Mrs. Burress, agreeing to pay her $1,120 therefor out of the proceeds of the sale of said timber; that the purchasers of the timber were to pay for same from time to time as they cut same; that Twyman agreed ·to act as trustee for him and Mrs. Burress in collecting the money to be paid for the timber, and in paying over to Mrs. Burress out of same the $1,120 and interest thereon which he (Clark) had agreed to pay for the land; and that Mrs. Burress was then to execute and deliver a deed conveying said east half to him (Clark). In his said answer Clark further alleged that Twyman, as such trustee,

collected on account of said timber approximately $1,500, out of which he paid Mrs. Burress the amount he (Clark) had agreed to pay her for the land; that, having so paid for the land, Twyman had Mrs. Burress to convey same to him, instead of to Clark; that thereafterwards, to wit, on January 27, 1916, Twyman represented to him that the proceeds collected by him of the sale of said timber were not sufficient to pay the sum he (Clark) had agreed to pay Mrs. Burress therefor, and requested him (Clark) to execute the note sued on, assuring him that same, when executed, would be credited with the amount of said proceeds; that he (Clark) did not then, nor until the institution of this suit, know how much said Twyman had collected on account of said timber, and, having implicit confidence in Twyman, and relying on his said statement and assurance, he (Clark) executed said note.

In a supplemental petition Twyman alleged that, shortly after Mrs. Burress conveyed the land to him, he had a settlement with Clark, in which it was agreed that Clark owed him $750 on account of the land; and that Clark then executed and delivered to him his promissory notes for sums ·aggregating that amount. In said petition Twyman further alleged that about January 1, 1916, he "had another and further settlement" with Clark, in which it was agreed that Clark owed him on account of said land the sum of $1,125, to cover which Clark then executed the note sued on. Twyman was a merchant; Clark, a negro about 60 years of age, who could neither read nor write—was a farmer. He had been one of Twyman's customers during many years. It appeared from testimony heard at the trial that in January, 1916, Twyman held four· notes in his favor, for $187.50, each, purporting to have been made by Clark on January 1, 1911, and to be secured by a vendor's lien on the east half of the Mitchum survey, mentioned above; and that in January, 1916, and at the date of the trial, he held a note for $1,125, purporting to have been made by Clark January 1, 1916, and to be secured by a vendor's lien on said land. Twyman testified that the amount including interest, due January 1, 1916, on the four notes for $187.-50 each, was $1,125, and that the note for that amount was made by Clark to take the place of the four notes. It further appeared from said testimony that, at the time the four notes for $187.50 purported to have been made, Twyman, acting for Clark, had collected $720.28 on account of timber cut on said east half of the Mitchum survey, and had paid same over to Mrs. Burress, and that he had collected sums aggregating $493.-72 on account of timber on the west half of said survey, which he credited on an open account he had against Clark. Twyman testified that, in addition to the $720.28 he had

---

paid Mrs. Burress, as stated out of the proceeds of the sales of timber, in January, 1911, he paid her $634.93 as the balance then due her for the land, out of his own funds, and had her convey the land to him. He further testified that the $634.93 was less than the balance Mrs. Burress claimed to be due her, and that in a settlement he had with Clark, January 27, 1911, he claimed, and Clark agreed, that the latter was due him on account of the land, not only the $634.93 he had paid Mrs. Burress, but the difference between that sum and the sum Mrs. Burress claimed to be due her. That difference, he said, added to the $634.93, made $750, which Clark then agreed he owed on account of the land. The four notes for $187.50, purporting to have been made by Clark January 1, 1911, but really made said January 27, 1911, Twyman said, were for the $750. Clark, testifying as a witness, denied that he had such a settlement with Twyman, and denied that he executed said four notes.

On special issues submitted to them the jury found with Twyman on his contention that he had such a settlement with Clark in January, 1911, but they further found (and the finding is not attacked, as without the support of testimony or otherwise) that in the settlement Twyman agreed that the amount (afterwards ascertained to be $493.72, as stated above) he had received for Clark on account of timber on the west half of the Mitchum survey, and credited on the open account between them, should be credited instead against the $750 represented by the four notes. It is obvious that, had the credit been accordingly given, it would have appeared that in January, 1916, there was a balance remaining unpaid by Clark on the purchase money of the land of only $256.28 and interest, or $384.42 instead of $750 and interest, or $1,125, the amount of the note sued on. Referring to that note, Clark testified that he—

"didn't know what it was; didn't know what was in it, nor what it was for." "I signed this paper [note]," he said, "without having read or knowing what it was. I signed it with his [Twyman's] word. He told me, if I signed this note, he would give me a deed and credit the timber. I thought it was a deed. Yes, sir; I said just now, if I would sign this note, that he would give me credit for my timber.

"Q. Then you did know it was a note? A. He said note and deeds, too. I didn't know it. No, sir; I did not know as a matter of fact it was a note. I didn't know, because they hadn't read it."

The witness Brown testified that he was employed by Clark to represent him in adjusting a controversy between him and Twyman in regard to the open account between them.

"I made arrangements with Mr. Twyman," the witness said, "to come to my office and fix up this personal account. He brought this land note along with him, this note for $1,125, and after we got the personal account all straightened out I told Mr. Twyman I wanted all the notes and everything he had in his possession relating to Isom's personal account; wanted him to turn them over to Isom when he made the $250.00 note. He said he would, and did bring a lot of notes and papers relative to Isom's personal account, and at the same time he brought this note along. After Isom signed the note for $250, Mr. Twyman took it and looked it over, and then I says: 'Mr. Twyman, where were the notes and other obligations you hold against Isom?' He said: 'They are there in an envelope.' I said: 'Give those to Isom, and that will square the thing up.' He says: 'No; I have a note here on some land Isom must sign, if I give him these receipts; a note he will have to sign, if I give him these receipts.' Then he pushed this note here out, and told Isom to sign that. Isom turned to me and says: 'Mr. Brown, must I sign it?' I said: 'Isom, I don't know anything about that transaction at all.' Isom says to Mr. Twyman: 'What land is that?' Mr. Twyman says: 'A part of that land you are living on.' Isom says: 'What part of it, Mr. Twyman?' He said: 'The east part.' Isom says: 'Mr. Twyman, what are you going to do about the timber?' Mr. Twyman said: 'You and me can straighten that all up together, and Mr. Brown don't know anything about it; you just sign it; Mr. Brown don't know anything about it.' Isom said: 'What are you going to do about the timber? Those men have taken it off.' He said: 'You go ahead and sign there, and you come with me to the store, and we will straighten it out.' Isom said: 'Are you going to give me credit for my timber?' Twyman said: 'Certainly I will; you know I give you credit for everything due you.' Isom turned and put his mark on there, and Mr. Twyman asked me to witness it, and I did."

Twyman as a witness denied that he agreed, when Clark signed the note, to credit same as Clark and Brown testified he did. On the issue thus made the jury found that Twyman and Clark did agree, at the time the latter signed the $1,125 note, "that the money derived from the sale of timber on the west half of the Mitchum survey should be credited on said note." Twyman insisted that the finding made it the duty of the court to render judgment in his favor for the amount of the $1,125 note, after crediting same as of the date of the trial with the $493.72 he had collected on account of the timber on the west half of the Mitchum survey. The trial court, however, construed the finding to the agreement was that the credit against the purchase money due Clark on the land on account of said timber was to be entered as of the dates the payments for the timber were made to Twyman, and, instead of rendering judgment for Twyman for $631.28, rendered judgment in his favor for $476.85 as the balance due on the $1,125 note. We think the court correctly construed the finding and did not err when he refused to render

judgment in Twyman's favor for a greater sum than he adjudged in his favor.

S. P. Jones and J. T. Casey, both of Marshall, for appellant.

Bibb & Bibb and Brown & Hall, all of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). We have carefully considered the assignments in appellant's brief, and are of the opinion neither of them shows error which requires a reversal of the judgment. Therefore it is affirmed. ·